**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DEVAUN ROBERTS,

      Plaintiff,

v.                                                                                  Case No. 8:26-cv-1226-WFJ-CPT

CITY OF TAMPA, *et al.*,

      Defendants.

_____/

**ORDER**

Before the Court is *pro se* Plaintiff Devaun Roberts's amended civil-rights complaint under 42 U.S.C. § 1983. (Doc. 4). Because Mr. Roberts is a prisoner suing government officials, the Court is required to screen the amended complaint and dismiss it if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A. After careful review, the Court concludes that the amended complaint must be dismissed with prejudice for failure to state a claim.

Shortly after midnight on April 23, 2022, Mr. Roberts was a passenger in a vehicle in Tampa, Florida. (Doc. 4 at 9, 22). Officers J. Ramos and D. Williams initiated a traffic stop after observing that the vehicle was traveling "without any lights on." (*Id.* at 22). The driver "refused to stop," leading police on a "high-speed chase." (*Id.* at 9). The vehicle ultimately came to a stop after "police vehicles" "ramm[ed]" into it. (*Id.*) The officers removed Mr. Roberts from the front passenger seat. (*Id.*) Officer Ramos proceeded to search the vehicle, recovering a handgun on the "floorboard" "under the front passenger

seat." (*Id.*) Mr. Roberts told the officers "that the vehicle was not his and denied ever knowing there was a firearm under the front passenger[] seat." (*Id.*) Nevertheless, the officers arrested Mr. Roberts for carrying a concealed firearm. (*Id.* at 10).

Mr. Roberts was booked into jail. (*Id.*) He was "forced to consume ill food that caused him to vomit," and he was "forced to fight on numerous occasions with inmates just to use the phone." (*Id.* at 11). Approximately one week after his arrest, Mr. Roberts's attorney persuaded the prosecutor to drop the concealed-carry charge because the State "could not prove that the firearm was in [Mr. Roberts's] control." (*Id.*) Mr. Roberts was released from custody on May 2, 2022. (*Id.* at 12).

Based on these allegations, Mr. Roberts sues Officers Ramos and Williams for false arrest, false imprisonment, and malicious prosecution. (*Id.* at 5). He also sues the City of Tampa, the Tampa Police Department, and Mayor Jane Castor, alleging that they "allow[ed]" the officers to arrest Mr. Roberts without probable cause and "commence a prosecution . . . on false charges." (*Id.*) Mr. Roberts seeks $5 million in compensatory damages, $2 million in punitive damages, and a "declaration" that his constitutional rights were violated. (*Id.* at 13).

The amended complaint must be dismissed because, even accepting Mr. Roberts's allegations as true, the officers had probable cause to arrest him for carrying a concealed firearm. "An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010); *see also Osborne v. Am. Multi*

*Cinema, Inc.*, 348 F. App'x 535, 538 (11th Cir. 2009) ("The existence of probable cause creates an absolute bar to [plaintiff's] complaints of false arrest and false imprisonment, and defeats his claims for malicious prosecution." (citation omitted)). "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Brown*, 608 F.3d at 734. "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009).

At the time of Mr. Roberts's arrest, Florida law made it a third-degree felony to "carr[y] a concealed firearm on or about [one's] person." Fla. Stat. § 790.01(2) (2022). "For a firearm to be concealed, it must be (1) on or about the person and (2) hidden from the ordinary sight of another person." *Ensor v. State*, 403 So. 2d 349, 354 (Fla. 1981). A firearm is on or about a person if it is "physically on the person or readily accessible to him. This generally includes the interior of an automobile and the vehicle's glove compartment, whether or not locked." *Id.*; *see also Bailey v. State*, 442 So. 2d 385, 386 (Fla. 2d DCA 1983) ("A firearm is on or about one's person if it is in close proximity to him within his easy reach."). Likewise, "[t]he term 'ordinary sight of another person' means the casual and ordinary observation of another in the normal associations of life." *Ensor*, 403 So. 2d at 354. "Ordinary observation by a person other than a police officer does not generally include the floorboard of a vehicle, whether or not the weapon is wholly or partially visible." *Id.*

Here, Mr. Roberts was a passenger in a vehicle that led police on a high-speed chase. (Doc. 4 at 9). When the chase ended, Mr. Roberts was removed from the front passenger seat. (*Id.*) Officer Ramos searched the vehicle and found a handgun on the "floorboard" "under the front passenger seat." (*Id.*) The gun was "readily accessible with a round in the chamber and 9mm rounds in the magazine." (*Id.* at 22). These facts were "sufficient to cause a person of reasonable caution to believe that" Mr. Roberts was carrying a concealed firearm. *Brown*, 608 F.3d at 734; *see also J.E.S. v. State*, 931 So. 2d 276, 280 (Fla. 5th DCA 2006) (evidence sufficient to support conviction for carrying concealed firearm where defendant "was seated in the backseat of the car and the gun was on or about his person and readily accessible to him under the front seat"). Therefore, the officers had probable cause to arrest Mr. Roberts.

Mr. Roberts appears to contend that probable cause was lacking because he "denied ever knowing there was a firearm under the front passenger[] seat." (Doc. 4 at 9). But "probable cause does not require officers to rule out a suspect's innocent explanation." *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018); *see also Washington v. Rivera*, 939 F.3d 1239, 1246 (11th Cir. 2019) (an officer need not "explore or eliminate every theoretically plausible claim of innocence" to have probable cause). Mr. Roberts also alleges that the charge was eventually dropped. (Doc. 4 at 11). But that fact is "of no consequence" to the probable cause determination. *L.S.T., Inc. v. Crow*, 49 F.3d 679, 685 (11th Cir. 1995) ("The existence of probable cause is an absolute bar to this § 1983 action. The fact that all charges against the plaintiffs were eventually dismissed for one reason or another is of no consequence to this determination." (citation omitted)); *see also Hernandez*

*v. Wells*, No. 8:21-cv-1488-KKM-TGW, 2022 WL 1607190, at *5 (M.D. Fla. May 20, 2022) ("[Plaintiff] alleges that the State Attorney's Office decided to abandon the charge on which [he] was arrested. But those decisions are immaterial for determining whether the officer had probable cause . . . .").

Because the officers had probable cause to arrest Mr. Roberts, the amended complaint must be dismissed. *See Osborne*, 348 F. App'x at 538 ("The existence of probable cause creates an absolute bar to [plaintiff's] complaints of false arrest and false imprisonment, and defeats his claims for malicious prosecution." (citation omitted)).

The Court previously identified the deficiencies in Mr. Roberts's allegations and gave him an opportunity to amend his complaint. (Doc. 3). Nevertheless, the amended complaint fails to state a viable claim. Because further amendment would be futile, the Court declines to grant Mr. Roberts another opportunity to amend. *See Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.").

Accordingly, it is **ORDERED** that Mr. Roberts's amended complaint (Doc. 4) is **DISMISSED with prejudice**. The Clerk is directed to enter judgment against Mr. Roberts and to **CLOSE** this case.[1]

**DONE** and **ORDERED** in Tampa, Florida, on May 18, 2026.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

---

[1] Mr. Roberts mentions the conditions of his confinement at the county jail, but it does not appear that he intends to assert claims based on those allegations. The dismissal of this action is without prejudice to Mr. Roberts's right to pursue (in a new action) any cognizable claims based on jail conditions.